**STATE, Plaintiff-Appellee, v. RHOADS, Defendant-Appellant.**

Ohio Appeals, Fourth District, Highland County.

No. 132.   Decided July 22, 1955.

Richard L. Davis, Pros. Atty., Hillsboro, for plaintiff-appellee.
Forrest F. Berry, James D. Hapner, Hillsboro, for defendant-appellant.

## OPINION

By GILLEN, J.

Defendant, William B. Rhoads, was jointly indicted with Charles W. Milburn and Charles W. Smith on three counts.  The first count of the indictment charges the three defendants with unlawfully, maliciously and forcibly breaking and entering the dwelling house of Herbert N. Smith with intent to steal, take and carry away personal property in violation of the provisions of §2907.15 R. C.  The second count of the indictment charges the defendants with stealing certain personal property therein described in violation of the provisions of §2907.20 R. C. The third count charges the defendants with arson in violation of the provisions of §2907.02 R. C.  Both Charles Smith and Milburn are nephews of defendant, Rhoads.  Charles Smith, an exconvict, entered a plea of guilty to the first count of the indictment and was sentenced to the Ohio Penitentiary.  Milburn was sentenced to the Mansfield Reformatory on his plea of guilty to the first count of the indictment.  Rhoads pleaded not guilty and was tried and convicted on the charge of breaking and entering an inhabited dwelling with intent to steal.

Most of the evidence adduced at the trial is not in dispute.  The three men started out early Saturday evening, May 22, 1954, on a beer-drinking spree which continued throughout the night.  About 10 o'clock Sunday morning, May 23, they parked their car on the secondary road

leading to the home of Herbert Smith approximately one-half mile away. Witness Andrew Robinson testified that he stopped his car near the place where Rhoads and his companions were parked. Rhoads got out of his car and walked across the highway to converse with Robinson concerning their past experiences. The conversation lasted about ten minutes. As Robinson drove away he passed Herbert Smith who had just left home. Herbert Smith testified that he left his home at ten minutes until ten o'clock to go to church and that he returned at 11:15. Upon his return, he discovered that his home had been forcibly entered, all of the rooms ransacked and three or four fires burning in different parts of the house. After extinguishing the fires he discovered that numerous articles had been stolen, including a rifle and a chain saw. It is the claim of Rhoads that he returned to his automobile after his conversation with Robinson and that he fell asleep. That when he awakened his car was parked near the Smith residence and his two companions were missing. He entered the Smith home in search of his companions, where he found Charles Smith downstairs and Milburn upstairs. He claims that he told Smith they had better get the hell out of there and that he went upstairs and told Milburn that he was leaving. The three departed and went to the home of Charles Smith where they remained until evening. The rifle and chain saw were found at the home of Charles Smith. Rhoads claims to have no knowledge of the fact that the chain saw and rifle were hauled away from the Herbert Smith home in his automobile. In fact, it is his claim that, during the brief interval of time the crime was being perpetrated, he was asleep in his automobile and that he did not participate in the breaking and entering of Smith's home. Both Milburn and Charles Smith were returned to Hillsboro to testify as witnesses for Rhoads. It is clearly apparent, from their testimony, that they were endeavoring to shield Rhoads, who was their uncle. Milburn, under cross examination, admitted signing a statement a few days following the commission of the crime in which he implicated Rhoads as a participant. A careful examination of the record can leave no doubt about the commission of the crime. It was wholly within the province of the jury to believe or disbelieve the claim of Rhoads that he was asleep during the time the crime was being perpetrated and that he did not participate therein. It is apparent from the verdict of guilty that the jury did not believe his story and certainly the evidence is sufficient to support that conclusion.

It is urged that defendant was deprived of a fair trial by reason of the alleged misconduct of the prosecuting attorney, Davis. The first and second assignments of error are directed to this proposition. During the examination of prospective jurors on **voir dire** Davis asked the following:

"Mr. Davis: And you feel if a man is guilty he should be fined irrespective of his personal position?

"Mr. Claibourne: Right.

"Mr. Davis: Mr. Schmidt, how do you feel?

"Mr. Schmidt: The same.

"Mr. Davis: And you feel that a man with a family should take

into consideration the fact he is a man with a family if he commits a crime. If he commits a crime he should be answerable for it irrespective of his children?

"Mr. Schmidt: That is right."

B. E. page 5.

No objection was made at the time by counsel for defendant A consideration of the entire **voir dire** examination does not disclose any prejudicial error in this line of questioning. Counsel for defendant was afforded ample opportunity to examine the jurors in regard to their qualifications. Throughout the trial it was made clear to the jury that the guilt of the defendant must be established beyond a reasonable doubt.

The other matter complained of in regard to the misconduct of the prosecuting attorney related to his inquiry about the use of a lie detector. It is apparent, from the record, that all three defendants had voluntarily submitted to a lie detector test a few days following the commission of the crime. The day before defendant was placed on trial his counsel filed a motion requesting that defendant be given a lie detector test based on questions approved by the court. It does not appear that this motion was ever ruled upon. During the **voir dire** examination the prosecuting attorney inquired as follows:

"Mr. Davis: If this man was shown to have taken a lie detector test is there anyone who would have any prejudice or any feeling against, that is to begin with, against the operation of that machine or what it might show? In other words, is there anybody who at the outset feels that the lie detector is all wrong, they should never be used or that its results are entirely unreliable?"

Counsel for defendant objected in the following manner:

"Mr. Berry: Your honor, I respectfully, for the record, or for the consideration of your honor, enter an objection to this line of questioning regarding the lie detector due to the fact that defendant has made a motion for the lie detector test on questions prepared by the Court and I wonder, until the Court rules on what has been done and due to the fact this last application has been denied, if the Court could exclude questioning on that part until the Court rules as to whether they will admit such evidence?

"The Court: Of course, the jury is bound to follow the instructions of the Court and if there is any testimony regarding the lie detector test the Court will instruct the jury concerning that.

"Mr. Davis: Do I have the approval of the Court to question concerning them?

"The Court: I don't think so at this time."

B. E. pages 9, 10.

During the examination of witness Joseph Martina, a lie detector operator and laboratory technician for the state of Ohio, the prosecuting attorney inquired in regard to the test given defendant Rhoads. Objection was made to this line of questioning and, in the absence of the jury, the trial court heard the arguments of counsel on that issue. The court ruled as follows:

"The Court: I believe the waiver takes care of that. The Court will allow the conversation with Mr. Martina, but when it comes to introducing the findings produced by the impulses, that can't go in, and I would rather the Prosecutor wouldn't bring it up, just simply say now, the objection that part of it will be sustained." (Sic—Ed.]

B. E. pages 82, 83.

The result of the test was not offered in evidence and the matter was not pursued further by the prosecuting attorney. Not only had defendant voluntarily submitted to the lie detector test at the London Prison Farm but one day prior to the commencement of his trial had requested the court to order another test based upon questions approved by the court. This motion was commented upon by counsel for defendant in the presence of the jury. Under such circumstances, reference by the prosecuting attorney to the lie detector test did not constitute misconduct. The ruling of the court in regard to this matter corrected the situation and the jury could not have been misled or prejudiced by the reference to the test.

We have carefully examined the entire charge of the court and find that the complaint made in regard thereto is without merit. The trial court correctly defined each element of the various offenses contained in the indictment. After considering each assignment of error we have reached the conclusion that defendant was given a fair trial and that no prejudicial error was committed. The judgment of the trial court will, therefore, be affirmed.

Judgment affirmed.

McCURDY, PJ, COLLIER, J, concur.